UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MILLER LIFTING PRODUCTS, )
A DIVISION OF GHM INDUSTRIES, INC., )
And H.J. HIRTZER & ASSOCIATES, INC., )
    Plaintiffs, )
  )
v. ) C.A. NO.
  )
UNDERWRITERS )
LABORATORIES, Inc., HUGH PRATT, )
 Individually, INSULATUS )
COMPANY, Inc., and )
ASTM INTERNATIONAL, )
    Defendants. )

## COMPLAINT WITH PRAYERS FOR INJUNCTIVE RELIEF

This action arises from the adoption and implementation of an industry standard known as UL/ANSI 2737 Standard for Crane Insulators. Testing to industry standards is a lucrative and competitive business in this country. Many companies in this industry are affiliated with non-profit entities that develop the standards. Manufacturers whose products comply with industry standards benefit as well.

This case arises from an illicit attempt by a manufacturer to manipulate a Nationally Recognized Independent Testing Laboratory ("NRTC") into proposing a standard that includes needless features and essentially outlaws the American made products.

UL/ANSI 2737 concerns insulating links for cranes that operate near live power lines. Defendant Underwriters Laboratories, Inc. developed and promulgated UL/ANSI 2737 based exclusively on the input of Defendants Hugh Pratt, Individually and through the company that he

1

owns or controls, Insulatus. Defendant Insulatus is a company based in the United Kingdom, it manufactures and sells insulating links for cranes, and it competes with Plaintiffs Miller Lifting Products and H.J. Hirzter. As a result of the input of Hugh Pratt and Insulatus, UL/ANSI 2737 requires certain features that are not essential for safety but which Insulatus' insulating links have but the Plaintiffs' insulating links do not.

Defendant ASTM International is a US based Standards Development Organization ("SDO"). It too was developing a standard for insulating links with Plaintiffs input. This work, by ASTM Committee F18, was summarily halted in August of 2011 as the result of complaints originating from individual members of UL's committee for UL/ANSI 2737. Upon information and belief, ASTM halted work on its standard for insulating links due to "professional courtesy". However, there are many instances in which there are multiple test standards for a single item, each having been developed by a different organization. There is no reason to preclude multiple standards for crane insulating links.

The Plaintiffs seek immediate injunctive relief as well as damages pursuant to M.G.L. Chapter 93A, under the Sherman Act and under the Massachusetts common law.

Parties

1. Plaintiff Miller Lifting Products, a Division of GHM Industries, Inc. has a place of business at 100A Sturbridge Road, Charlton, MA 01507. Miller Lifting Products is one of two US companies involved in manufacturing and selling insulating links for use on cranes.

2. Plaintiff H.J. Hirtzer & Associates, Inc. has a place of business in Pleasanton, California. H.J. Hirtzer is the other US company involved in manufacturing and selling insulating links for use on cranes.

3. Defendant Underwriters Laboratories, Inc. (UL) is, upon information and belief, a non-profit company that also qualifies as a for-profit Nationally Recognized Testing Laboratory (NRTL) in accordance with 29 CFR 1910.7. UL has a place of business at 7 Stuart Road, Chelmsford, MA.

4. Defendant ASTM International is, upon information and belief, an SDO. ASTM has a place of business in West Conshohocken, Pennsylvania.

5. Defendant Hugh M. Pratt is an individual who, upon information and belief, maintains a residence situated in Bristol, Avon, United Kingdom. Pratt is the President and owner of Insulatus, Inc. and the primary representative of an alleged foreign crane safety organization known as Crane Power Line Safety Organisation ("CPLSO"). CPLSO holds itself out as a safety organization, however, its primary purpose is promoting the attributes of a single insulating link – that manufactured and sold by Insulatus.

6. Defendant Insulatus Company, Inc. is, upon information and belief, an import sales company organized in the State of Ohio. It has a place of business at 708 Marks Road, Suite B, Valley City, Ohio. Insulatus is involved in purchasing in the UK, importing to the USA, and selling in the USA insulating links for use on cranes.

Jurisdiction and Venue

7. This Court has jurisdiction over this matter pursuant to Section 4 of the Sherman Act, 15 U.S.C. §§4 and 28 U.S.C. §§1331, 1337.

8. Venue is proper in this District under Section 12 of the Clayton Act, 15 U.S.C. §22 because Defendants UL and Insulatus are corporations which transact business within this district and therefore are found within this district.

Facts Common to All Counts

9. In or about August 2010, the Occupational Safety and Health Administration ("OSHA") published a major revision of 29 CFR Part 1926 *Cranes and Derricks in Construction* which included new requirements relating to crane electrical safety where proximity to high voltage power lines is of concern (the "New Rule"). The New Rule required for the first time, under specific circumstances, the use of an insulating link.

10. Insulating links are used in crane lifting operation to prevent electrocution in the event of accidental contact with overhead high voltage power lines.

11. In addition to requiring the use of insulating links in the August 9, 2010 New Rule, OSHA defined an insulating link as "an insulating device listed, labeled, or acceepted by a Nationally Recognized Testing Laboratory (NRTL) in accordance with 29 CFR 1910.7." This, in turn, created a need for a new test standard for insulating links which would be used by an NRTL for its acceptance testing. 29 CFR 1910.7 further requires that the test standard used by the NRTL be that of a US-based SDO which uses a broad-based, consensus process in standards development.

12. No such insulating link test standard existed when the New Rule was issued on August 9, 2010.

13. Plaintiffs Miller Lifting Products and H.J. Hirzter had designed and manufactured insulating links for many years as of 2010. In August, 2010 Miller initiated an effort to promote and support the development of a test standard for insulating links by requesting that Defendant ASTM do just that – begin developing a test standard.

4

14. Work on an ASTM test standard began in September 2010 with the participation of Miller and Hirzter.

15. This work, by ASTM Committee F18, was summarily halted in August of 2011 as the result of complaints originating from individual members of UL's committee for UL standard 2737. Upon information and belief, members of UL's management contacted ASTM to insist that work on ASTM F18 stop. ASTM halted its work on the standard for insulating links upon information and belief as a professional courtesy to UL.

16. In any event, ASTM refuses to complete its work on the insulating link standard even though it is almost complete.

17. In the mean time, the standard being developed by Underwriter's Laboratory is the product of fraud and manipulation by one of the Plaintiffs' competitors, Insulatus.

18. In a manner contrary to its own policies and procedures, and one which violates the requirement that the standard be developed in an open, consensus-based process where those directly and materially affected by them have the chance to participate, Defendant UL has become complicit in a process whereby the standard that it has adopted, UL 2737 and for which it is seeking qualification for use by an NRTL, explicitly prohibits the use of American insulating link designs for crane electrical safety applications and requires design features highly specific to the design promulgated by Insulatus, Inc.

19. UL/ANSI 2737 in its present form is based almost entirely upon a foreign standard created years ago by CPLSO. CPLSO is allegedly a small foreign crane safety organization. In reality it was formed in the UK by and for the purpose of furthering the interests of a single insulating link manufacturer based in the UK - Insulatus, Inc.

20. In addition, the committee which created UL/ANSI 2737 included as members the principal of Insulatus and four individuals closely associated with the company, three of whom were direct business associates of Insulatus and who will benefit from the monopolizing effect of UL/ANSI 2737. Together, these five, allied members held a voting majority on the UL committee.

21. The Plaintiffs brought these conflicts of interest and deviations from UL's policies and procedures to UL's attention on or about September 28, 2011 and at various times thereafter to no avail.

22. Indeed, UL notified Miller by letter dated December 8, 2011 that it would go forward with UL2737, although representatives of Plaintiffs were invited to join the committee.

23. Consequently, Plaintiffs seek injunctive relief whereby Defendant UL is required to investigate the improprieties behind UL/ANSI 2737 and to report to the Court on the results of its investigation, to cease and desist from implementing UL/ANSI 2737 until the investigation is complete and a reconstituted committee can be formed to work on developing the standard from inception, and whereby Defendant ASTM is ordered to resume the development and implementation of the insulating link standard on which it was working.

24. Three companies sell insulating links in the United States – the Plaintiffs and Insulatus. If UL/ANSI 2737 becomes the only standard regulating insulating links, and if it remains in its current form, it will effectively prevent Miller Products and H.J. Hirtzer from selling their insulating links in the United States.

25. The course of action by Hugh Pratt on behalf of Insulatus and CPLSO as a monopolist to block Miller Products and H.J. Hirtzer's ability to sell their insulating links will

cause Miller Products and H.J. Hirtzer to lose revenues of over $20 million and to lose profits of over $3.5 million over ten years.

26. The above actions by Hugh Pratt, individually and on behalf of Insulatus and CPLSO constitute an abusive use of regulatory power, refusal to deal, unfair business practices, interference of contracts, economic advantages and, ultimately, collusion with UL to prevent Miller Products and H.J. Hirtzer from being able to sell their insulating links in this country.

### Count I
(Unfair or Deceptive Acts or Practices in Violation of M.G.L. Chapter 93A Against Defendants UL, Pratt and Insulatus)

27. Plaintiffs reallege and incorporate by reference the allegations set forth above.

28. The actions of Hugh Pratt individually and on behalf of Insulatus and CPLSO are intended to deprive the Plaintiffs of any share of the crane insulating link market and are unfair and deceptive.

29. Defendant UL became complicit with Defendants Pratt, Insulatus and CPLSO after being informed of their actions, yet insisting on going forward with this standard.

30. The unfair and deceptive acts of Defendants UL and Insulatus will cause Plaintiffs Miller Products and H.J. Hirtzer to sustain losses in Massachusetts. Miller Products has a usual place of business in this Commonwealth where it manufactures insulating links for cranes. Its Massachusetts business will be harmed substantially by the implementation of UL 2737 because Miller's insulating links will no longer comply with the standard and therefore the company will sustain significant business losses.

Count II
(Violation of Sherman Act by Defendants)

31. Plaintiffs reallege and incorporate by reference the allegations set forth above.

32. The combination of Hugh Pratt, individually and on behalf of Insulatus and CPLSO as alleged herein above constitute an unlawful conspiracy to restrain trade and interstate commerce in the United States market for insulating links for cranes in violation of section 1 of the Sherman Act, 15 U.S. C. §1.

33. Such conspiracy consists of a continuing agreement, scheme and concert of action by and between UL and Pratt to effectively eliminate competition by the Plaintiffs. Defendants UL and Pratt have engaged in a concerted vertical refusal to deal.

34. The effect of the acts of UL and Pratt, and the inaction of ASTM, is to wrongfully and unlawfully suppress competition in the insulating link industry. The construction industry will be deprived of the benefits of competition in the insulating link industry and will have only one insulating link available for purchase.

35. Eliminating the Plaintiffs' insulating links from the market will elminate jobs and cause the Plaintiffs to lose profits.

36. Pratt's actions and monopolist conduct induced UL to adopt a standard that only Insulatus' insulating link meets is in violation of section 2 of the Sherman Act 15 U.S.C. §2.

37. The actions or Pratt and UL and ASTM's inaction will cause injury not only to competition and the construction industry, but to the Plaintiffs by reason of which they will suffer damages of over $3.5 million in lost profits which shall be trebled and awarded to the Plaintiffs as provided in Section 4 of the Clayton Act, 15 U.S.C. §15.

8

38. Unless the actions and, in the case of ASTM, its inaction is enjoined, competition and the public in the relevant market will suffer irreparable harm in a manner that monetary damages cannot compensate.

## Count III
(Tortious Interference with Business Relations Against Defendants Pratt and Insulatus)

39. Plaintiffs reallege and incorporate by reference the allegations set forth above.

40. Plaintiffs have advantageous business relations with the public in the relevant industry.

41. Defendant Pratt had knowledge of Plaintiffs' relationships and prospective relationships. Pratt did not bring Plaintiffs' existence to UL's attention during the formative stages of its work. Eventually, Plaintiffs' involvement in the relevant industry became known to UL as well as the fact that UL/ANSI 2737 was modeled after a standard promulgated by CPLSO.

42. Insulatus has intentionally and improperly interfered with the advantageous business relations that Plaintiffs have with their customers by providing UL with erroneous and misleading information about the safety features necessary for insulating links, which resulted in the promulgation of a standard that supports Insulatus' insulating links and expliciting prohibits the use of Plaintiffs' insulating links.

43. Defendant Insulatus acted with improper motive when it influenced UL's standard development process. The features for insulating links that Defendant Insulatus convinced UL to adopt are not necessary from a safety perspective. Yet, they are features which Insulatus' insulating links have and Plaintiffs do not.

<u>Prayer for Relief</u>

WHEREFORE Plaintiffs Miller Products and H.J. Hirzter demand the following relief:

a.) that a Preliminary Injunction enter against Defendants UL and Insulatus that enjoins UL from publishing, selling or using in any way UL2737 pending a Judgment in this case;

b.) that a Preliminary Injunction enter that requires Defendant ASTM to resume work on its standard for insulating links for cranes;

c.) that Judgment enter against Defendants UL and Insulatus on the remaining Counts of the Complaint;

d.) that Plaintiffs be awarded treble damages and attorneys fees, plus the costs of bringing this action, pre-judgment interest at the contractual rate of 18% per annum, and

e.) such other and further relief that the Court deems just and proper.

**THE PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Plaintiffs Miller Products and H.J. Hirzter,
By their attorneys,

/s/ Kathryn A. O'Leary
Kathryn A. O'Leary, Esquire
BBO#551660
Gould & Ettenberg, P.C.
370 Main Street, Suite 1050
Worcester, MA 01608
508-752-6733
February 27, 2012